UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALINOOR EDIN,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-1208-MLP

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Alinoor Edin, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, has become indefinite. (Dkt. # 6 at 3.) He seeks release from detention and injunctive relief related to future redetention and third-country removal. (*Id.*) Respondents filed a timely return (dkt. # 9), along with an unsworn declaration from their counsel, Jordan Steveson (dkt. # 10), and a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Sooseon Jeon (dkt. # 11). Petitioner filed a timely traverse (dkt. # 14). The matter is now ripe for review.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court GRANTS in part the petition.[1]

## I.   BACKGROUND

Petitioner is a native and citizen of Ethiopia who entered the United States without inspection near San Ysidro, California, around March 31, 2023. (Jeon Decl., ¶ 3.) Petitioner was issued a Notice to Appear ("NTA") charging inadmissibility under Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*Id.*, ¶ 4.) ICE did not file the NTA with an immigration court.[2] (*Id.*)

On April 26, 2023,[3] Petitioner was released on an Order of Release on Recognizance ("OREC").[4] (Jeon Decl., ¶ 5.) Following release, Petitioner asserts he complied with ICE's requirement to periodically check in. (Dkt. # 6 at 5.) Respondents do not argue otherwise. (*See generally* dkt. # 9 at 3-4.)

On May 27, 2025, after Petitioner reported to the ICE field office in Seattle, ICE revoked his OREC and re-detained him. (Jeon Decl., ¶ 6.) There is nothing in the record explaining why ICE revoked his OREC. ICE then served Petitioner with another NTA, charging inadmissibility

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

[2] The April 18, 2023 NTA is not in the record, so it is unclear whether any future hearing or appointment was scheduled for Petitioner to attend following his April 26, 2023 release.

[3] The Court observes that the record reflects that, prior to his release, Petitioner claimed fear of returning to Ethiopia on April 1, 2023, and that U.S. Citizenship and Immigration Services ("USCIS") "reviewed and accepted the fear referral package." (*See* Steveson Decl., ¶ 2, Ex. A at 3 ("Immigration History").) The same document notes that "USCIS was unable to interview [Petitioner] and issued [an NTA] at an unknown date and time." (*Id.*) It is unclear why USCIS was unable to interview Petitioner regarding his fear of returning to Ethiopia (as he was in custody and not released until approximately two weeks later) and the parties do not otherwise discuss whether Petitioner sought asylum.

[4] The April 23, 2023 OREC is not in the record. Accordingly, any specific conditions of release are not before the Court.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) and placed him in removal proceedings in the Tacoma, Washington Immigration Court. (*Id.*) He was thereafter transported to the NWIPC. (*Id.*)

On September 5, 2025, an immigration judge "denied relief from removal" and ordered Petitioner removed to Ethiopia. (Jeon Decl., ¶ 7; *see* Steveson Decl., ¶ 2, Ex. B.) Petitioner initially reserved appeal, but ultimately did not appeal the order of removal, which was due by October 6, 2025. (Jeon Decl., ¶ 7; Steveson Decl., ¶ 2, Ex. B.) Pursuant to 8 U.S.C. § 1231(a)(1)(B)(i), an order of removal becomes "administratively final" when "the agency's review proceedings" are complete. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021).

Respondents assert that when noncitizens are ordered removed and reserve appeal, DHS Enforcement and Removal Operations ("ERO") will "not typically apply for travel documents right away because appeals delay the removal order from becoming administratively final and there is a possibility that the individual may still prevail in his immigration case." (Jeon Decl., ¶ 8.) Further, Respondents state that "travel documents issued by consulates are generally temporary" and "in some instances, . . . will expire in 30 days or less." (*Id.*) Accordingly, ICE waited until Petitioner's order of removal became administratively final before seeking a replacement Ethiopian passport for him. (*Id.*, ¶ 9.)

Three months after removal became final, on January 21, 2026, ICE submitted a passport application to the Ethiopian Embassy. (Jeon Decl., ¶ 10.) On March 5, 2026, Petitioner was interviewed by a representative of the Ethiopian Embassy, who "indicated the passport could be issued in one to three months." (*Id.*, ¶ 11.)

Respondents assert that "ERO believes that Ethiopia will issue a passport for Petitioner because it previously issued Petitioner a passport and Petitioner has only been in the United

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

States for approximately three years." (Jeon Decl., ¶ 12.) Respondents further assert that "ERO regularly removes noncitizens with removal orders to Ethiopia" and "anticipates Petitioner will be removed to Ethiopia in the normal course once his replacement passport is obtained." (*Id.*, ¶ 14.) Respondents do not provide any additional information as to the timing of acquiring travel documents for Petitioner.

On April 10, 2026, Petitioner filed the instant petition for writ of habeas corpus, seeking the following relief:

1. an order requiring Respondents to immediately release him from custody;

2. an order requiring Respondents to provide the Court with a declaration confirming that he has been released from custody within twenty-four hours;

3. an order prohibiting Respondents from re-detaining him without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since he was previously released;

4. an order prohibiting Respondents from redetaining him unless the Government:

   (a) obtains a valid travel document to Ethiopia for him,

   (b) provides the valid travel document to him and his counsel,

   (c) offers Petitioner the opportunity to leave on his own within two months, and

   (d) Petitioner does not leave. Under such circumstances, the Government may be permitted to re-detain Petitioner provided it has already made concrete arrangements for him to be put on a flight to Ethiopia in the reasonably foreseeable future;

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

5.  an order prohibiting Respondents from removing or seeking to remove him to a third country without notice and meaningful opportunity to respond in compliance with applicable statutes and due process in reopened removal proceedings;

6.  an order prohibiting Respondents from removing him to any third country where he is likely to face imprisonment or other punishment upon arrival;

7.  an order releasing him without GPS monitoring; and

8.  any other relief that the Court deems just and proper.

(Dkt. # 6 at 25-26.)

## II.    LEGAL STANDARDS

### A.    Habeas Petition Legal Standard

"Writs of habeas corpus may be granted by…the district courts…within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B.    Injunctive Relief Legal Standard

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

A party "seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The third and fourth *eBay* factors merge when the Government is the party opposing the issuance of injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where the party can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages[.]").

### III.    DISCUSSION

### A.    Petitioner's Detention Has Become Effectively Indefinite

In *Zadvydas v. Davis*, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to authorize post-removal-period detention only for the period reasonably necessary to effect removal. 533 U.S. 678, 689, 699 (2001). The Court adopted a presumption that detention up to six months after the removal order becomes final is reasonable when it is related to effectuating removal. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

The parties acknowledge Petitioner's post-removal period began on October 6, 2025, and he is approaching seven months in custody. Respondents concede that "Petitioner's detention exceeded the six-month presumptive period on April 6, 2026." (Dkt. # 9 at 6.) His continued detention is therefore beyond the six-month period that the Supreme Court in *Zadvydas* identified as "presumptively reasonable." 533 U.S. at 701.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

Petitioner must also provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Petitioner argues he has met that burden because "the most the Ethiopian consulate could say is that *if* it were to grant a travel document, it would take many months to issue one," despite the final order being issued almost seven months ago. (Dkt. # 6 at 20.) In addition, Petitioner asserts, there is additional time between obtaining travel documents and effectuating his removal. (*Id.*) Respondents argue this is insufficient to satisfy Petitioner's burden because he has not "provide[d] affirmative evidence that removal lacks significant likelihood, such as proof of insurmountable barriers like severed diplomatic relations or categorical refusals by all potential countries." (Dkt. # 9 at 6 (citing *Zadvydas*, 533 U.S. at 701).) In reply, Petitioner argues that *Zadvydas* does not support Respondents' argument, but regardless, he has demonstrated that in seven months, ICE has made no progress in removing him. (Dkt. # 14 at 2-3.)

While the Court disagrees with Petitioner insofar as he suggests *no* progress has been made, it agrees that what little progress has been made sufficiently demonstrates good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE submitted Petitioner's passport application on January 21, 2026, over three months after his order of removal became final. Further, his interview with the Ethiopian Embassy in March did not reveal that travel documents are forthcoming or removal is significantly likely. At most, the evidence before the court is that a passport "could be issued in one to three months"—not that it would. (Dkt. # 9 at 4; Jeon Decl., ¶ 11.) It has now been over three months since ICE submitted Petitioner's application, and two months since his embassy interview, with no indication that the application has been accepted, processed, or approved.

The Court rejects Respondents' argument that *Zadvydas* requires a petitioner to present affirmative evidence like "severed diplomatic relations or categorical refusals by all potential countries" to satisfy their burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. (*See* dkt. # 9 at 6.) Nothing in *Zadvydas* supports that argument. Further, "severed diplomatic relations" and "categorical refusals" are more accurately characterized as evidence demonstrating impossibility—a standard much higher than that articulated by the Court in *Zadvydas*.

The burden therefore shifts to the Government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents argue that removal is significantly likely in the reasonably foreseeable future for several reasons. (*See* dkt. # 9 at 6.) Respondents first point to the fact that Petitioner has previously possessed an Ethiopian passport and he has only been out of Ethiopia for three years. (*Id.*) In addition, he has been interviewed and advised that a travel document "could take one to three months." (*Id.*) Finally, Respondents argue that, once the travel documents are received, "Petitioner will be removed in the normal course." (*Id.*)

The Court is not persuaded that Respondents' reasoning demonstrates reasonable likelihood of removal or otherwise rebuts Petitioner's showing. At most, the evidence reflects that the Ethiopian Embassy was contacted in March 2026 and gave a vague timeline for travel documents generally—not a timeline specific to Petitioner. The relevance that Petitioner "has only been in the United States for approximately three years" is not intuitive and Respondents offer no further explanation why that would be material for the Court's analysis here. Courts in this Circuit have found that efforts to obtain travel documents do not make removable reasonably foreseeable. *See e.g. Tran v. Noem*, 2025 WL 3268491, at *3 (E.D. Cal. Nov. 24, 2025) (assertion that the Government was "actively working on obtaining a travel document for

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

Petitioner to Vietnam" was insufficient to show removal was reasonably foreseeable); *Hambarsonpour v. Bondi*, 2025 WL 3251155, at *2-3 (W.D. Wash. Nov. 21, 2025) (respondent's continued assertions over the course of weeks that they would receive travel documents "soon" and "in the next weeks" did not make removal reasonably foreseeable).

Further, Respondents' argument that ICE regularly removes noncitizens to Ethiopia is equally unhelpful as it relates to Petitioner's removal timeline. Presumably, the Government would be able to provide a more defined timeline for Petitioner if they are, as Respondents argue, regularly removing noncitizens to Ethiopia. (Jeon Decl., ¶ 12.) However, it remains unclear whether Ethiopia has agreed to issue a passport or travel documents, when they would issue, and how long the Government would need to effectuate removal once those documents arrived. Respondents have not, for example, requested an extension of time or otherwise addressed what the "normal course" means as it relates to Petitioner. Thus, on these facts, the Court agrees with Petitioner that the unanswered question right now is not *when* travel documents will issue, but rather *if* they will issue at all. (*See* dkt. # 14 at 4-6.)

Accordingly, the Government has not rebutted Petitioner's showing, and his immigration detention has become effectively indefinite under *Zadvydas*. The Court therefore grants the petition for writ of habeas corpus.

**B.    Remaining Claims and Injunctive Relief**

*1.    Injunctive relief related to re-detention*

Petitioner asks the Court to permanently enjoin the Government from redetaining him unless several conditions are met. (Dkt. # 6 at 25-26.) First, Petitioner requests the Court permanently enjoin the Government from redetaining him without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing that Petitioner

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

is a flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released. (*Id.* at 25.) Petitioner also asks the Court to permanently enjoin the Government from re-detaining him unless (1) the Government first obtains a valid travel document to Ethiopia; (2) provides that document to him and his counsel; (3) affords him an opportunity to leave on his own within two months; and (4) he does not leave within that time. (*Id.*)

Respondents argue that such injunctive relief is contrary to 8 U.S.C. § 1252(g)[5] and the implementing regulations for detaining noncitizens who are subject to a final removal order. (*See* dkt. # 9 at 8-9.) As an initial matter, the Court observes that in the time between Petitioner's redetention on May 27, 2025, and his request today, an immigration court has entered an order of removal to Ethiopia, which became administratively final once the deadline to appeal lapsed. While the parties here make various arguments under the federal regulations in support of their respective positions (*see* dkt. # 6 at 10-11; dkt. # 9 at 9), they do not acknowledge this shift in statutory authority or otherwise discuss what effect, if any, the final order of removal has on the Government's authority to redetain Petitioner in the future. Rather, Petitioner points to the Government's noncompliance with 8 C.F.R. § 241.13 when they redetained him in October 2025 to draw an inference that similar future harm is likely. (Dkt. # 6 at 10-11.) In other words, Petitioner's reasoning is that because the Government did not comply with regulations governing revocation while he was on conditional release, it is likely the Government would redetain him under similarly unlawful circumstances if they sought to enforce the final order of removal.

---

[5] Title 8 U.S.C. § 1252(g) is entitled "Exclusive Jurisdiction" and provides: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

The Court is not convinced this is true, as any future redetention of Petitioner would fall under a different statutory scheme with its own implementing regulations. *See* 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no likelihood of removal in the reasonably foreseeable future."). The cases cited by Petitioner in support (*see* dkt. # 6 at 9) involve noncitizens subject to a final order of removal prior to redetention who were released because the Government found their respective removals to be unlikely in the reasonably foreseeable future and therefore governed under § 241.13. *See Tran v. Bondi*, 2025 WL 3725677, at *1 (W.D. Wash. Dec. 24, 2025); *Khim v. Bondi*, 2025 WL 3653724, at *1 (W.D. Wash. Dec. 17, 2025); *Rodriguez v. Bondi*, 2025 WL 3466925, at *1 (W.D. Wash. Dec. 3, 2025). The parties here do not address this distinction and whether it affects the Government's authority to redetain Petitioner in the future.

Moreover, because the record related to Petitioner's current redetention is limited, it does not necessarily follow that any future redetention would be similarly unlawful or otherwise noncompliant with federal regulations. Prior to his redetention, Petitioner argues he was "directed to check [in], at times every six months and at times every year" and that he complied with every check-in. (Dkt. # 6 at 5.) Respondents only acknowledge that Petitioner was released on an OREC on April 26, 2023, and that he was redetained on May 27, 2025. (Jeon Decl., ¶¶ 5-6.) While Respondents do not suggest, and the record does not reflect, that Petitioner violated a condition of release (*see generally* dkt. ## 9-11), Petitioner only asserts that he "believes that his re-detention was not authorized by an appropriate official." (*See* dkt. # 6 at 21.)

In sum, the current record does not establish that any future redetention of Petitioner would be unlawful absent a permanent injunction. Accordingly, Petitioner's request is denied.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

2.        *Injunctive Relief Related to Third-Country Removal*

Petitioner asks the Court to restrict Respondents' ability to remove him to a third country. (Dkt. # 6 at 25-26.) Petitioner specifically argues that the Fifth Amendment, the INA, the Convention Against Torture ("CAT"), and implementing federal regulations "mandate meaningful notice and an opportunity to respond to any attempt to remove [him] to a third country in reopened removal proceedings." (*Id.* at 22.) In addition, Petitioner seeks to enjoin his removal to a third country on the basis that it would be punitive under the Fifth and Eighth Amendments. (*Id.* at 15, 19, 23-25.)

Respondents argue that any requests related to third-country removal are "without merit, speculative, and not ripe for review." (Dkt. # 9 at 7.) Respondents point to the fact that there is "no concrete indication that such removal to a third country will occur" because they are seeking travel documents to Ethiopia. (*Id.*)

Petitioner argues his requests *are* ripe. First, he asserts that Respondents have not been able to remove him to Ethiopia, which necessarily requires the Government to consider third-country removal. (Dkt. # 6 at 23.) Further, Petitioner argues Respondents' policy for third-country removal is unlawful because, in practice, they do not comply with their regulatory and constitutional obligations. (*Id.*) Finally, as to Petitioner's claim that removal would be punitive, he asserts that the Government's policy regarding third-country removal and the unlikelihood that he will be removed to Ethiopia makes it reasonably likely the Government would remove him to a third country "with a punitive intent and punitive result." (*Id.* at 25.)

Although the petition contains legal argument challenging ICE's third-country removal practices and policies in general, it does not explain why Petitioner himself faces a concrete, imminent risk of unlawful third-country removal under the challenged policies at this time. (Dkt.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

# 6 at 23-25.) There is no evidence that the Government has abandoned efforts to remove Petitioner to Ethiopia or is otherwise considering third-country removal. That the Government has not obtained Ethiopian travel documents to date does not mean it cannot in the future. On this record, the Court cannot conclude that, absent an injunction, Petitioner "faces a likelihood of removal to a third country with no meaningful opportunity to challenge that decision." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 737 (W.D. Wash. 2025). Accordingly, the Court denies Petitioner's request for a permanent injunction limiting third-country removal.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 6) is GRANTED in part.

    a.    Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

    b.    Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)    Petitioner's request for injunctive relief is DENIED without prejudice.

Dated this 7th day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13